Good morning, your honors. Niloufar Mazhari appearing specially on behalf of Joseph Lacombe for the appellant. It appears that the ruling of the IJ and the BIA was based on two matters, the non-recognizability of the PSG of Salvadorian women, and then nexus. So I will address both of those issues. So as far as the Salvadorian women being a PSG, first of all I'd like to make a distinction between Salvadorian women meaning anybody who is a national of El Salvador, versus women who live in El Salvador. I think that's an important distinction. Well, what was the PSG? I mean, this sort of bleeds over from our prior argument, because I don't think anybody understood that distinction that you're just raising. The IJ seemed to say Salvadorian women was a nationality-based PSG, not just women who were in El Salvador. I understand that that's what the IJ thought, but respectfully I think that that is an error because, for example, let's say a woman that lives in Saudi Arabia is not allowed to drive, and that disadvantage will apply to a woman that lives in Saudi Arabia, whether she's Saudi or whether she's Swiss. So I think the distinction here is important because an El Salvadorian woman living in the United States, for example, will probably not be a PSG, given the argument that we are making as far as the harm suffered. Can you point me to somewhere in the record where you made this distinction before the IJ? Because I've got to be honest, if I heard Salvadorian women, I'm thinking women who – I mean, that seemed to be the basis of it, that she was part of this culture, whereas if you had an American woman who lived in El Salvador, she wouldn't necessarily be a part of that culture. That seemed to be the distinction that was being made here. I understand that it wasn't very clearly argued the way that I'm doing right now, but – So I'm going to just reiterate my same frustration, which is these IJs are trying to do the best they can. Again, I don't know whether you were the one arguing below, but it seems like a lot to be looking backwards and imputing all of this knowledge to the IJ when – the IJ made this distinction. You agreed the IJ looked at this and said, look, you've raised a bunch of gender-based problems, but you haven't tied them to Salvadorian-based problems. I think that if we look at the totality of the argument that was presented, which is that women in El Salvador culturally are deemed property of the man, and that was presented in the country conditions report, et cetera, I think that one could infer that we are referring to any female that lives in El Salvador as opposed to somebody who is an El Salvadorian national. Can I just ask – I guess I'm a little bit confused about this exchange that's going on, because it seems like asylum is always going to be based on the country you're making the claim about, and your client was a woman in El Salvador and a Salvadorian woman, and so maybe it would matter if she was in Saudi Arabia, but she's both things in this country, and why does it matter? I'm not sure why you're saying it matters. I'm saying it matters because – what I'm saying is that because she lived in El Salvador, and these people, these two men who abused her viewed her as property because they knew that the law will not protect her, even though the law was written the way it is, but it's basically not implemented. And it seems like you've made a strong argument, I think, in that regard, but I guess we don't need to know whether a British woman in El Salvador would have more respect because your client is an El Salvadorian woman in El Salvador, and she is in this culture and treated in the culture, so I don't really understand why it matters. Perhaps it doesn't. I'm happy to move on, but – But it may matter to my colleagues, so I just – I'm a little confused. I mean, it seems to me that the reason why it may matter is because the – if the PSG were just women in El Salvador or just women generally, then you get all the gender-based – I mean, the IJ seemed to say – the basis of the IJ's decision was, yeah, I give you that women and – women broadly are discriminated against, and that might be sort of the basis, but you haven't shown that Salvadorian women as opposed to other women are being mistreated. That was the basis for the IJ's decision, at least as I read it. I think the reason it matters is for practical purposes. If a woman who is, let's say, a U.S. citizen encounters this situation in El Salvador, she wouldn't have an asylum case, so it's a practical outcome case. Well, okay, maybe, but, I mean, this is what the IJ said at 54, and this is the sentence I'm referring to. The respondent has not attempted to connect or show that they would have only arisen – this is talking about the harms – because she was from El Salvador as opposed to having her be a female from a different place or a different country. And so the IJ clearly based its decision on the nationality part. The IJ said if it were just gender, that'd be fine. If you had just defined the PSG as women, maybe you would have been fine. Well, I think that the fact that we defined it as El Salvadorian women, I mean, if the court will agree that women are a PSG, I mean, since women is in the title of the PSG that we used, then we can certainly sever the two and just say women. I mean, I can – the reason I bring that up again is just that I think it's relevant that this is a woman living in a country where the laws do not protect her. So did the BIA incorporate the IJ's decision here? Yes. Yes, Your Honor. Because it gave its own reasoning as well, which didn't make this point about this distinction. The BIA did not raise this point. I think they were more concerned with nexus as opposed to the existence of a PSG. So I can move on to that point. Can I ask you about the impact, in your view, of the country conditions evidence? The impact is that in the minds of the persecutors, knowing that the law, even though it might be written to protect a woman, is really not implemented because culturally women are considered property. Domestic violence, for example, is considered a personal matter. And particularly in a situation like this where there is definitely persecution, the IJ has found that, and we're certainly not disputing that, but the acts could have been a lot worse, let's say, and in the minds of the perpetrator, knowing that culturally they're not going to get into any trouble for what in their mind might be a minor act because a woman is a man's property. The declaration submitted by the respondent to the IJ basically said that, you know, he told me, Boris told me that, you know, I'm going to make you mine and that since, she says, since we knew about other things that go unanswered by the authorities, the things that happen to women, that's why we didn't go to the police. So the reason the country conditions report is important is that that adds to the motivation of the perpetrator to commit these crimes. So it's not just the sexual desire, if you will, which is what the IJ and the BIA talked about of these two men, but that certainly could be a motivation, but it's a sexual desire coupled with the fact that they're not going to get into any trouble, that the law is not going to protect these women. That is a substantial factor, and I think that's where the nexus comes in. But also, apart from nexus, does the country condition evidence bear upon whether Salvadoran women are a cognizable social group? I would submit that it does because they are treated differently than men. I think that's what the country conditions reports talk about. And so by virtue of the fact that they have different rights as men in El Salvador, that would make them more particular and more cognizable. We've taken you over your time, but we'll still give you some time for rebuttal. Let's hear from the government. Thank you. Good morning, Your Honors, and may it please the Court. My name is Robert Coleman. I represent the Attorney General. Just a couple quick matters of clarification. The issue of whether the proposed social group is cognizable is not before this Court because the Board did not address that issue. Specifically, the central issue that the Board affirmed on was nexus. Is nexus. But doesn't nexus go into this whole debate? I mean, if it is just women who reside in El Salvador, it seems like the petitioner has a pretty strong nexus argument here that that wasn't considered. I'm not asking you to concede that point, and you can argue that. But I'm more interested in, I mean, are we throwing a curveball here by saying that it's both gender and nationality that was part of the PSG? Yes, and this is another point that I wanted to clarify, was that at least on appeal here in the opening brief filed by petitioners, she indicated that the PSG is defined not by the physical presence of a woman in El Salvador, but rather her identity as a woman and her nationality, Salvadoran. That's page 18. Yeah, that's how I'd always understood it. Exactly. So that was what the premise that we were operating under until earlier. So given that, there is no nexus. But that's how our nexus needs to go. Your argument is our nexus needs to be tied to both gender and nationality. We can't just limit our nexus to gender. You're right, because that's how it's been pled, and that's the position that petitioner was taking. You're reading from the brief before us? Opening brief before this Court, page 18. So she's bringing a claim based on treatment in El Salvador. It's always going to be about El Salvador. So she's a Salvadoran woman in El Salvador. What case says that you have to put the words in the order? I'm still really confused about this difference, given that the claim is always going to be about the country and the presence in that country. Yes, but it's petitioner at counsel, and if it's petitioner's position that she was harmed because of, in part, her Salvadoran nationality, so limiting that group of women in El Salvador to a subset, including people of Salvadoran nationality, I agree. I don't think that helps her nexus claim, but that's the claim that she made. So that's what we're going off of. And that's what the I.J. said. That's how the I.J. interpreted it. In fairness, the I.J. interpreted it both ways, it seems, because it was vaguely put, I believe, at that level. But there is a ______. Well, but what about what I read from 54, sorry, where the I.J. seems to specifically make this argument and say the respondent has not attempted to connect or show that the harms would have only arisen because she was from El Salvador as opposed to having her be a female from a different place or different country? That's correct. The I.J. was attempting to cover that base as well, because that was a permissible interpretation of what the PSG was. But regardless, we don't have ______. Can I just ask a follow-up about that? Yes, of course. So petitioner's counsel said that the BIA incorporated the I.J.'s decision, suggesting we should review both. But I actually don't see that in the BIA decision. I think we're just reviewing the BIA, aren't we? That's correct, Your Honor. To an extent, the Board did agree with and affirm, of course, some portions of the I.J.'s decision, and therefore ______. But it didn't cite matter of Burbano. It didn't say for the reasons given by the I.J. It didn't say anything like that. That's correct, Your Honor. But in ER-4 in the BIA's report, the BIA says the respondent has not established clear error in the I.J.'s finding that she did not demonstrate that she was harmed on account of her membership in a particular social group of Salvadoran women. Wouldn't that incorporate this argument anyway? Yes. And that's what I meant to refer to when I was saying that some portions are agreed to and affirmed and therefore ______. But this argument is before us. Some portions. Yes. We can't get away from this by just ______. We can't get away from the Salvadoran women by just saying, hey, the I.J. dealt with that, but the BIA didn't. Right. So the cognizability is a separate issue. That issue is not before the court. But the nexus issue, which, of course, does have some relation to what the proposed social group is, that issue, the nexus issue, is what is before the court. And here we do have evidence as to ______. And evidence of motive is critical. That's what the Supreme Court indicated in Elias Zacharias. And it's the evidence as to what the motive is of the purported persecutors, not generally speaking what is a condition that is present in the home country, but rather what is the purported persecutors' motive. And here we do have some evidence as to that. And it comes directly from Flores herself in the declaration that she submitted before the immigration court. And it indicates that Rigoberto, he was the child abuser, it indicates that Rigoberto targeted her because she was vulnerable. She was a child. Let's put apart Rigoberto. Let's focus on Flores. As far as Boris is concerned, I thought you might say, as far as Boris is concerned, the evidence, again, coming from Flores herself, indicates that he was interested in her because he found her attractive as an initial point. But as the trigger for his threats, which is presumably what gives rise to Flores' fear, is because she did not reciprocate his advances. He's lashing out at her because of that. That doesn't necessarily have anything to do with her being a woman, much less a Salvadoran woman. But, okay, he's trying to rape her. He's threatening her with rape. He's saying you're going to be mine and I'm going to force you to be mine. How is that, how is the culture in which women are treated as property and not protected not at least a reason for withholding for that kind of behavior toward a woman in this context? Well, I think if you look at the evidence, Boris does use the word mine. I don't think that using the word mine is infrequent. I think that's just something that people do. But he says I'm going to do it the bad way instead of the good way. I mean, he is threatening her with rape, and I don't think that's contested, right? He did threaten her in a very serious way. But we don't know why he was targeting her rather than, say, her friend, who was there at the time when he made that very serious threat, another Salvadoran woman. Why is he targeting Flores than her? So you're actually arguing that even, so if we adopted this argument that Salvador just meant someone, a woman in El Salvador, you're defending this to say there is no nexus between her gender. That's correct. You would have to assume that he was attracted to her or interested in her because she's a woman, but we just don't have that evidence. I mean, I don't have a hard time seeing the nexus on the gender. I think your strongest argument is that it has to be both gender and nationality, and then we can debate whether we're being too technical on that. But, I mean, I don't want to cut you off, but it does seem to be pretty extenuated to say this wasn't because of gender. It clearly seemed to be because of gender. We would have to assume that end of the record. There's no evidence that he pursued her because of her gender. Again, why would he not have pursued the friend? Well, I mean, maybe he's attempting to rape men also, but we have no evidence of that, and I'm not sure there's a reason to assume that that is in the background. I completely agree with that. And I don't understand how, more to the point, I don't understand how there's no evidence regarding a neighbor or another woman. Why does that matter? I mean, if she's targeted because she's a woman, isn't that our only inquiry? We don't need to say he targets all women. He wants to rape all women on the streets. I completely agree, but there is no evidence that he targeted her because she's a woman. It's because he found something attractive about her, but we don't know what it was that he found attractive about her. But in a culture where he thinks he can get away with this because she's a woman, where he thinks she should be his property because she's a woman, it is because she's a woman, at least in part, right? You would have to assume that that's true because that's a condition perhaps in the country generally, but we're talking about the motivation of the individual persecutor, and we can't just extrapolate that and assume that he necessarily had that same motivation. And here, furthermore, we're talking about a substantial— Well, what do we think his motivation is? That's not for the government to prove. The burden was initially on Petitioner to prove the nexus, and moreover at this stage in the game— Can you point us to a case? Because I don't think we've ever imposed this higher burden. We have examples where women are raped, where women are tortured, abused, harassed, all kinds of things, and I'm not aware of us ever saying, well, we don't know if that's because you're a woman. I think we've sort of always assumed, at least in the sexual context like this, that it's gender-based. I'm not aware of a case directly addressing that point, but all I would say as I'm wrapping up here is that at this stage in the game, the standard of review is extremely deferential, and so the question really isn't whether this court could find some evidence that could have supported an alternate finding in the first instance, but really the question is whether the record compels a contrary result. But cannot there be several bases? Yes. Right. So, yes, sexual violence is by nature sexualized, motivated by gender. And what I'm trying to understand is why didn't the IJ or the BIA conclude that it was not at least one of the central reasons for the acts alleged to be persecution? The reason the agency didn't find it to be a reason is because there is simply no evidence to show that that was a motivating factor. But, again, to the extent this court were to disagree with that, the question really is whether the evidence comes high enough to compel a contrary result, and Respondent's position is that that simply is not the case here. Can I just go back just to make sure I haven't missed some research? This difference between a woman seeking asylum or withholding from El Salvador who is Salvadoran, do we have any case that says she has to put the words, she has to say Salvadoran woman instead of women in El Salvador, the articulation between the two of those is a difference that is important? No, I don't believe so. But I guess the question is that they would be different because if somebody is saying I was targeted because I'm a woman and Salvadoran, that's just different as the court has already acknowledged. That's different than just being a woman present in El Salvador. But if, like, 99% of the women in El Salvador are Salvadoran women, why are we worried about the one British woman down in the embassy? I don't really understand. I don't know either, but that's what Petitioner put forward. Isn't that our case law that we are limited to what they define as PSG? We're not a court that can step in and start making up other PSGs that aren't defined and certainly weren't presented to the agency below. Yes, and then it's just a moving target that makes it difficult to address the argument, especially if Petitioner is opening her brief with saying that it is one and not the other. But I guess this goes to, so maybe Judge Nelson has a case, but I'm asking you if you have a case that says the words in what order when the difference is basically everyone in the country, whichever way you put those words, why does it matter? Is there a case that tells us you have to articulate it exactly one way or the other? There's not a case, and I don't believe there's any evidence here to show that they are an exact overlap or that, for instance, 99% of women in El Salvador are Salvadoran. I don't know that that's true. There's just no evidence as to that. But you agree that women are a protected ground? Well, that hasn't been litigated in this case. So if that were the issue that this court would like the board to address, then I'd have to remand on that. Okay, we've taken you over your time and given you two extra minutes, so let's give the other side two extra minutes for rebuttal as well. Thank you. It seems that my colleague's argument was that we don't know the motivation of ---- I actually want to ask you about your ---- because he cited the brief at page 18 where you said it was gender and nationality. Why aren't we bound by your argument? Are we free to just ignore your argument and say nationality doesn't matter, we only want to define this based on gender? No, but this is why I started my ---- Well, but you seem to be making a different argument at argument. Why aren't we limited to what you said in your brief and before the IJ and before the BIA? I think I'm just extending the argument that was made. It was pointed out that probably 99%, if not more, of women that live in El Salvador are El Salvadorian, and the culture of the country is very relevant. That's great. And if Judge Friedland were the attorney, she probably would have made those arguments before the IJ. But these arguments weren't made before the IJ. They weren't made before the BIA, and they weren't made before us. They were actually specifically that a different argument was made. So why should we now ---- And this is the problem is that we're shifting this all the time, and why should we allow that to happen? Why don't ---- I mean, normal party presentation principles say we're limited to what the arguments of the parties are. Why should we extend that? Why should we give an exception here? I would respectfully submit that, even though it certainly could have been made more clearly, I don't disagree with that. Well, it's not about clearly. You said gender and nationality. Are we supposed to just pretend that you didn't mean what you said in your brief and before the IJ and before the BIA? No, but I think that we should take the totality of the arguments made into consideration, and given that we presented country conditions reports for El Salvador. So if this woman ---- Again, if this woman was French or whatever, we wouldn't have an asylum case. But let's say for some reason we did. Still, the fact that she lived in El Salvador and was not given the privileges and immunities that a man would be given, I think that is important. That should be inferred from the totality of the argument. And so gender, it was argued, was not a motivation. Again, clearly men do also get raped, but it is predominantly, I think we can agree, a man-to-woman issue. And the fact that the culture of El Salvador allows this kind of behavior certainly would be motivation on the perpetrator. Because if I know that criminals that do smash and grab in San Francisco, knowing that they're probably not going to get arrested, those crimes increase because that increases the motivation. It may not be the underlying motivation that I'm going to commit this crime only because I know I'm not going to get arrested, but it certainly does increase the likelihood that the crime is going to be committed and is something that the criminal will consider. That's why we have criminal penalties to deter people. And so if there's no deterrence, this person can think, well, I can get away with this, this woman should belong to me if I want her. And so the motivation is clearly based on the gender and the fact that the laws are not there to protect an El Salvadorian woman or a woman who lives in El Salvador. Thank you. We've taken over your time now. Thank you both sides for the helpful arguments. This case is submitted. Can I make one comment? Yeah, of course. Mr. Coleman, I just want to commend you for showing up. We've had six INS cases argued this week. You're the only attorney who showed up. I don't know what's gone into that, but I hope that the message goes back to DOJ that as a government party, we expect you to be partners with the court in trying to understand this. Your argument also happened to be the best of the six, in my opinion. I'm just speaking for myself. We are better served in deciding these cases. We've had some tough cases. We are better served when the government takes these cases seriously and shows up. I think they're showing up in every other court around the country. I know there's an option not to show up in the Ninth Circuit right now, but I hope the message goes back that we are better served when you take the job seriously. Thank you for taking the time. I also wanted to say we are going to do a Q&A with the students after we have conference about these cases. We will not talk about any of the cases that we've heard, but anyone is welcome to stay as well if you'd like. Obviously, no obligation to do so, but we'll be back and talking to the students in a little while. Thank you all. We're adjourned. Thank you.
judges: FRIEDLAND, NELSON, Katzmann